Good morning. May it please the Court, my name is Vicky Lai and with me at Council table is Mike Filippovic and we represent Eric Moyer. The issue before this Court is whether in the absence of direct evidence of downloading, receipt, or possession of child pornography, there is probable cause to believe that Mr. Moyer possessed child pornography by downloading it onto his computer. In United States v. Gord, this Court reasoned that a subscription to a child pornography site may substitute for direct evidence of possession where that subscription is coupled with facts demonstrating that the subscriber knew what he was subscribing to before he subscribed and also facts that show an adherence to the site long after the subscriber would know what the contents of the site contained. In Gord, there is no doubt that Mr. Gord knew he was subscribing to a child porn site because the advertising on the site emphasized that the website contained over 1,000 pictures of girls ages 12 to 17 and referred to them as naked Lolita girls with weekly updates. And any time that Mr. Gord would have logged onto the site and publicly accessed the subscription pages and the home pages, he would have seen naked underage females again describing them as ages 12 to 17. In this case, though, wasn't there in the affidavit an assertion that all of the images on the websites to which your client subscribed were, in fact, all of them child pornography? That was in the affidavit. Well, we have a conclusory statement from the affiant who stated that he confirmed that the websites contained exclusively child pornography. But we can't work backward from ñ I mean, what was important in Gord is if we are going to give great weight to a subscription and we don't have evidence of possession, then you need to know what motivated the person to sign up in the first place. You can't work backward from the content. But we dispute that. Is that true in any other kind of affidavit for a search warrant? If someone has surveillance of someone's house and said they're making drug transactions, do we have to know whether they're motivated by money or what they're motivated by, or we just have to know that it's more likely than not that they're engaged in a crime? Judge Graber, in those cases it's different because generally you have evidence that the person possessed the drugs. You usually have testimony. You have informants that say, I saw the person. And here you have a paid subscription and an assertion that everything on the website was illegal. Why isn't that enough? Well, first we dispute whether the conclusion of the affiant that the websites exclusively contain child pornography is enough to show that the sites themselves exclusively contain child pornography. So that seems to be the crux here that is at least in my mind. The Supreme Court said we have to look for whether there's fair probability that there's evidence of a crime. Now we have, like, an experienced police officer who in conclusory terms says, I confirmed the site was devoted entirely to child porn. I mean, isn't the issue here really whether a police officer's statement that he confirmed a site was exclusively child pornography, whether that gives a fair probability that the defendant knew that's what the site was for? And then if you then combine that with the subscription. No, Judge Golden. I would point you out to your concurring opinion in the first Gord decision in which you said that it was common sense to equate the subscription with downloading because in the Gord case, there was no doubt that anyone who logged on to the site, to the public access pages of the site, which also offered a free tour of the contents of the site, that anyone who logged on and then paid money after seeing the blatant advertisements of the site, that he and also adhered to the site by continuing his membership even after knowing the contents, that it was commonsensical to infer that that person probably downloaded child pornography onto his computer. In this case, we don't know what motivated Mr. Moyer to sign up for these sites because there's no description of what he saw before he subscribed to the sites except a claim on the Farlow site that claimed that it contained 25 gigabytes of material and 30 hours of video. We also have the unqualified statement from Agent Radensky whom the government conceded that the court could not rely upon because the affidavit never set forth the credentials of the two investigating agents who said that when he went somewhere on the site, he saw a banner screen which depicted images of child pornography. And you also have the four examples that were set forth in the affidavit. No. The four examples pertain to the content of the site. So after you subscribe, this is what you might see. But I guess that was going to your comment that it was merely conclusory that it contained child pornography. It was a little more than that. There was illustrative examples to explain what the person meant when he said child pornography. It was a description. I mean, the description we think was inadequate. And also, the Farlow site was said to contain 25 gigabytes of material and 30 hours of video to describe two images from the site in which literally there are thousands of material I don't think supports the conclusion that the site exclusively contained child pornography. But I don't – I think even if – let's get away from the content because we have to, under Gord, have information as to what prompted Mr. Moyer to sign up for these sites in the first place. For example, in the Martin case, in all three Martin cases, Chief Judge Walker made it clear that what was the key issue in that case was what the advertisement of the girls 12 to 16 E group told the subscriber before he subscribed. It wasn't that later on they found out that the content of that site included child pornography. It was that before the subscriber subscribed, he would have known what he was getting into. And therefore, the act of subscription gives the reasonable inference that what you were seeking and what you wanted access to was child pornography. In this case, we don't know what he was seeking. He could very well have been seeking child erotica. He could have been seeking adult porn. We do know that he was interested in all sorts of pornography because he had two supervised release violations in 2002 and 2003 for possession of adult pornography. And without knowing his motivation for signing up for these sites, then we are left with only a subscription to a motivation for what? We don't know. And that was the point in Gord, that it is common sense if you have a site that blatantly advertises and tells you what we have is child pornography, and you take the active step of paying not an insignificant amount to buy what that site offers, then we can infer that what you wanted was child pornography and that you probably took advantage of that subscription by downloading. In this case, he could very well have subscribed to the first site, Farlows, which, again, only claimed to contain 25 gigabytes of material and 30 hours of video. Farlows on the site, and even assuming that there was child porn on the site, decided, hey, I've been stung once, I don't want to be stung again, and never go back. Because we don't the problem is, you can't go with the content of the site because we don't know what he did after he subscribed. In this case, it's not like Gord where he adhered to the site by continuing to become a member. He signed up for a one-time membership to two sites, and we don't know what he did after because he never renewed those subscriptions. I see I only have 32 seconds. That's it. You can reserve that for rebuttal. Thank you very much. We'll hear now from the government. May it please the Court. Good morning, Your Honors. My name is Jill Otake, and I represent the United States in this matter. The case before the Court is not one in which an innocent, ordinary Internet user stumbles onto a website and accidentally subscribes to a child pornography website and is now being persecuted by the government. What this case involves is a man who has a prior conviction for distributing child pornography, going out, finding a website that contains child pornography, paying a $100 subscription for that website that only contains child pornography, and then two weeks later paying another $100 for a 30-day subscription to a sister website that exclusively contains child pornography. One of the things that counsel just said was that Mr. Moyer subscribed only once to these two websites. And I'd like to clarify. He subscribed once on January 12th of 2006 to a website that exclusively contained child pornography, and within 15 days subscribed again, paying another $100 for a 30-day subscription. And as this Court ---- A different site. Different sites, Your Honor. That's correct. But they were sister sites that were under an umbrella site that was entitled XLOLS, X-L-O-L-S. Was the ---- Did the affidavit say that both sites were exclusively child pornography? It did, Your Honor. Or did it say one of them was? I'm sorry. It did. In paragraph 43, Special Agent Taborosky, whose credentials were outlined in the affidavit, confirmed that both the FireLaw site and the HotLaw site to which the defendant subscribed exclusively contained child pornography. And as this Court has said in Gorda, membership is both a small step and a giant leap. In this case, we have a defendant paying five times the amount of the subscription price that Mr. Gorda did. He pays $100 on two occasions. I think the only reasonable inference that can be drawn is if you pay $100 for a website ---- and I'll take the example that counsel just mentioned. Let's say he pays $100 for this website, discovers that it contains child pornography, decides he doesn't want to get stung, using counsel's words. Why then would he go back to the exact same sister sites and attempt again to find other pornography? Additionally, this is partially why his history is so relevant here. We know he's somebody who has a problem with child pornography. We know he's somebody who has a past addiction to ---- well, a past problem with child pornography and who has failed on supervised release in his sex offender treatment. The Gorda analysis, I think, is basically a two-step process. One, asking ---- Let me ask a question. Were those latter points within the affidavit? The latter, yes. That is, that he had a problem previously with child pornography and it failed in his supervised release. Right. It wasn't characterized as a problem, but what was included in the affidavit was his prior conviction for felony federal conviction for distributing child pornography, the fact that he received a sentence of 12 months and one day, and the fact that he twice violated his conditions of supervised release for, among other things, his failure to successfully complete a sexual deviancy treatment program. Okay. So do you view this case as a weaker case or a stronger case than the Lolita girl's site in Gorda? I actually view it in some ways as a stronger case. I mean, in some ways I'll admit that Gorda is stronger, but there are several ways in which the facts here are stronger than Gorda. It doesn't have the facts like in Gorda of what someone would have seen before they signed up, right? That is true. But here's what's different from Gorda, if I may. The facts in Gorda were clear, that Gorda itself, the websites to which Mr. Gorda subscribed were a mixed adult and child pornography website. What we know from the facts here are that the defendant first joins the FireLol's website, which is confirmed to be exclusively child pornography. And unlike Mr. Gorda, who would have had to take an affirmative step to cancel his membership, the defendant here takes an affirmative step to join a second website. So in some ways the facts of this case are indeed stronger. There isn't the issue of whether what was the defendant looking at in terms of was it adult pornography or child pornography. There isn't the issue of, well, he could have just joined this website, had this automatic payment, I guess, system, and would have had to affirmatively cancel it. We have somebody instead who is paying a significant amount of money, more than So he affirmatively signs up for the second site. Now, what about the fact that the affiant statement that he confirmed the sites were devoted to child porn is kind of a conclusory or ultimate statement? It doesn't really say how he confirmed it. It doesn't say I confirmed it by looking at, you know, 100 images on the site or 1,000. We don't know if he confirmed it by this means or that. Is that a problem? That is true, Your Honor. And although it would have been far more preferable if a sentence had been included stating, and here is how I confirmed it, what we do know is that he first of all And secondly, he provided what he described as sample images from the websites. And he characterized these images as being consistent with child pornography from Russia. So and below in the trial court level, there was no contention as to the credibility of this agent. So although it can be said that his statement is conclusory, he provides samples to back it up. He describes kind of the nature of these images. And he also, in the affidavit, includes a definition for what constitutes child pornography. The other, I'd like to take a moment to point out all of the steps that the defendant, Mr. Moyer, would have had to take in order to join these websites, because they are significant. He would have first had to go to the instant access page of the Umbrella website, which then gave him a choice of different types of payment plans. He had to choose the EGLE payment plan. He had to then fill out the EGLE payment plan required information. He then had to go back to the Umbrella website and choose between amongst 13 different websites, which he did. And then he had to decide, do I want a 30-day membership for $100, or do I want a 60-day membership? And after doing that, he then goes back and does it again within 15 days. There aren't many subscriptions that I can think of. In fact, none that I can think of for anything that would require $100 for 30 days, no magazine, no newspaper, not Netflix. What he was doing here is he's somebody who we already know has a problem with child pornography. He's devoting a significant amount of money to obtain child pornography. He ultimately he this man simply could not have joined by accident. He affirmatively renewed his membership. He did not mistakenly or inadvertently come across these images. He made the deliberate choice and took the deliberate steps necessary to become a member of these two websites. And given his past, given what he his prior conviction, he would have understood the significance of the names of the websites as well. And if Your Honor. I was probably too obtuse on this. I understood Lolita Girls, the significance. What's the names of these two websites? They're Fire Lols, F-I-R-E-L-O-L-S. And LOL? Yes. And Hot Lols. Is LOL like laughing out loud or something else? That's what the defense would like you to believe. But I think to an ordinary, yes, the answer is to an ordinary Internet user LOL would probably mean laugh out loud. But to somebody who has a past history of child pornography use, the reality is that the LOL term is more significant. What is it? Is it a reference to Lolita or something? Yes, it's a derivation of the name Lolita. And Fire Lols? Fire Lols, F-I-R-E-L-O-L-S. Oh, I see. So Fire Lols, a derivation. Fire and then LOL. And what's the second name? Fire Lols, Hot Lols, and the overall website was called X Lols. Okay. In light of this, all of these facts, Your Honors, it only makes sense to accord the great deference to Master Judge Benton's decision as is required under the law and take into consideration the extensive hearing and reasoning that Judge Robart did and affirm the decision of the district court denying the motion to suppress evidence. Thank you. Thank you, counsel. Ms. Lai, you have a little time remaining. Judge Graber, could we let Appellant's counsel have at least two minutes? Sure. Because there were a lot of points made in argument. I'd like to understand the responses if there's... Well, I'd like to address first the points that counsel makes about the significance of the names as well as the significance that she finds in the $100 payment. The problem is that that significance or the significance that she assigns to those facts were never mentioned in the affidavit. The affidavit simply refers to the sites as Hot Lols and Fire Lols and does not explain the significance of those names in child pornography parlance. And I would compare this case to United States v. Shields, which is cited in our brief, in which the court, again, was analyzing the probable cause analysis of a subscription to Girls 12 to 16, but they didn't just rest on the blatant advertising of the Girls 12 to 16 group. It also said that they could rely on the affidavit's explanation of what Lolita's Girls, I think it was Little Lolita's Love, which is the self-selected e-mail name of the subscriber. The affidavit in that case did not just rest on the fact that people might know what Lolita's means in childhood parlance. He explained it in great detail. And therefore, the Court said they could rely on that because it was uncontroverted. Did the affidavit mention that it was $100 for 30 days in each case and that they were under the same umbrella website? It did mention that. But the affidavit did not explain that $100 was significant. I mean, we don't know if $100 is significant only to child porn sites. $100 for a 30-day subscription could also be the going rate for adult porn sites. That wasn't explained in the affidavit. And I'd also like to point out that the point the government is making is somewhat different, which is simply that it would not be accidental that a person would spend $100. They would think about that. It wouldn't be accidental if we knew what his motivation was for signing up for the sites. If the sites, as in Gord and as in the Martin cases, Girls 12 to 16, made it clear  into the ego system and paying for the subscription would show a motivation to get the child porn that that site blatantly advertised. But in this case, it advertised it had 25 gigabytes of material and 30 hours of video. So we don't know what motivated him to sign up for the sites. And we don't know what he did after he signed up. He could very well we don't even know if he viewed any of the contents. He could very well have gone in, been surprised at what the contents of the sites were, and he never resubscribed. So that's why if you're going to sign. But he resubscribed to the sister site. He resubscribed to the sister site, but once. It's hard to believe he would have gone to the first site and been offended by what he saw and then sign up on the companion site. But once again, we don't know anything about the sister site at all, because the features of that site are even less described than the features of the first site. And I'd also like to point out that the en banc court in Gord characterized the LolitaGirls.com site as dedicated to child pornography. Defense counsel mentioned that it was a mixed site and therefore it was different. But the en banc court characterized the site not as a mixed site, but as a site dedicated to child pornography, because in that case, you had the owner's admission that he was operating the site as a child pornography site. So the mixed nature of the site was not significant to the Gord panel or the Gord en banc court. Thank you, counsel. We appreciate the arguments of both counsel. They've been very helpful. And the case just argued is submitted.
judges: Canby, Graber, Gould